Good morning, our honorees. It is my great pleasure to welcome Dr. Michael Kaplan to the committee. The committee has asked this morning to give two more incommon and ordinary meetings on this panel, and a few of whom have taken up to a stretch of maybe five days for groups and panel listeners. And of course, the doctor's treatment of the patient. Does it affect the cost of the procedure? Do you have any idea of factoring into the fee that Dr. Kaplan charged his patients for this return to the procedure? It may or may not. There's no evidence in the records to support that, Your Honor. But let me say this. Let me begin by saying that this is very suppressive. No court has ever instructed this sort of case, the way the judge did here. That is, the device used in the course of the meeting, as you mentioned, is a cell. But if the ultimate user here is the consumer, the patient, then you have to have an interstate commerce, and the physician sends his fee for services based on the cost of the medical supplies that he or she uses in the procedure. What does that constitute for health insurance? Because, Your Honor, you just used the keyword, the patient is paid for service. Service is not within the scope of the fee. It must be part of the charge. Would you require that a separate charge for the kind? You know, a family friend had brain surgery recently, and they put him on a hospital charge. The patient was on a hospital charge, and I'm not sure if they allowed him to take it home. Or did he have any help received? No, Your Honor. I had surgery in October. It didn't occur to me to turn to the doctor. It ended up being the same case. But there has to be a distribution of the article, an exchange from another person who helps do things. The article is given in exchange for money, and the article itself is in succession where time will pass. Well, are you aware of any cases involved? Even because there's a lot of this argument, there seems to be some that suggest that it could possibly be inserted into the bank. I'm sorry, Your Honor, what is the best case for your position? Well, I think the best case is simply a disclosure decision. And both of those cases are disclosure decisions, both the DeBoer and the R.I. vs. Cash Act. DeBoer said a sale requires a receipt, and a sale is where the passage of money, the exchange of money is received, and the disclosure decision is received. There is no case like that. There is no case like that in any way. You mean in a case like the Bowman case? Correct. The Bowman case. Right. You mean it's a legal argument? Right. It's just a legal argument. It's a legal argument. Your Honor, what is the best case? Well, I think the best case is a commercial relationship, because your client was not giving away all of the procedures required. So there's a commercial relationship. Okay. There's a commercial relationship, which was the same in DeBoer, where one gets at least a distribution, or a passage of money, the same means that somebody gets. Your Honor, there would be a warrant on the exchange of money. As I said before, you know, it's possible that it was the client's fault. Okay. Do you have any hope that this may be a better solution after the procedure is in your case? Since I'm only going to talk about your procedure. Would you then concede that this measure is better than all that? In fact, I can't really say that you'd agree with this, so it's your first time you've conceded. I'm sure. I mean, this is a very powerful, very good, we can just be friends, see how you do, see how you see the work. So, I mean, that's how you should be. So, on your decision, you know, that's really our choice. Well, in the case, in the case, as DeBoer said, it's a device that is simple, that means that in any case in which a physician uses a device, or a drug, even though he doesn't distribute it to the patient, it constitutes a sale, and this means that common malpractice uses, of many, many products, the FDA on its board has really said, well,  Let's do an example of what you need. You know, they, they can't be reviewed, they, the devices that they've used, because they're single use, and they say, well, we can either throw these files, whatever, you can take them home and reuse them, it's up to you. He thinks, well, part of what I'm paying for, is that file. And, he instead, So, So, you can see that, the person who finds you there, says that they were used for someone else, does that mean it wasn't sold for sale? Even if it was for sale, or intended to be available, well, Well, Well, But you're supposed to distribute it, and you don't. And so, in this case, you were supposed to, do at least single use things, after a similar use, and you didn't. So, It can't be called for sale, that is, after that first, pay for usage. Well, Well, Let's be clear. Okay. Let's be clear. The multiple use, of this device, is not forbidden, by the FDA, that's one of the prompts of this case, that being the, government side of the theory, that multiple use, is a crime and violation of the FDA. It's not a sin, so it's really, it's illegal, and it's a great crime, that is, really causing, an actual offence. So, let's be clear on this. The government, by using this case, has fixed, the restrictions. So, so, you may have to do, single use, for use, because that's not the use, that any device, is used for, is adulterated, right? And, it's adulterated, and the FDA, can do this better, in the theory, and the court, in this case, can do this better, because the fact, that this legal process, was not sufficient, to ensure, that these use sites, were sterile, for the, social use. But, but the, the court argued, and said, strategically, that the fact, that it can be reused, is not, does not constitute, adulteration, and being, being, in court, refused to do that, and the government argued, well, well, Dr. Hanckel, and Mary Kimmel, were free to use, these fluorescent paints, and part of the use, was meant to constitute, adulteration. They were allowed, to go to the jury, on the theory, that the mediums, which is, not, not approved, by the FDA, but clearly, are about, men and women, and, and the FDA, approved the, the, the jury, for all the other evidence, that the jury heard, that, in doing that, they, adulterated, and, and, and re-adulterated, in sanitary, and, that Dr. Hanckel, and Mary Kimmel, had, basically, conversations that he had, with, the other doctor, Dr. Golden, with the, phone inquiries, that he performed, in the, the, the, the, the medical assistants, who were not instructed, in the court, probably, on the, the devices. So, there's stories, that I believe, that, that these devices, were sterile, and, you, you, you are, Initially, the evidence, is the fact, that this jury, was committed, to, commit, bankruptcy, in, in the court, that patient shells, and, the use, is not a violation, of the SEC. And that is, it's, mutual, long root. It, it, being, if the jury had been informed, that should have dealt with this issue, long root, is not a violation, of the, of the SEC. The argument, that, the jury has made, that the use, was the crime, would have been, not detained. I think, they weren't instructed, in one way or the other, on, they weren't instructed, that the use, per se, was lawful, either. But, we should have argued earlier, but, but, the defense here, is that, parties, exclusively by, proceeding, the instruction, was, largely, by the jury's, own, illness. I think this is, too satisfying, a, Deadline at six o'clock. As of today. Session staring at, a, a, a, a, a, a, a, a, a, a, a, a,           a, a, a, a, a, a, a, a, a. trillion for single Israel for Israel for Israel  Sir jury jury jury for jury for sure for sure sure a a a a a a a jury jury jury jury jury experts experts experts new new new new new new new new new new new new new new new new  new new  new new new new new no no no no no no no . this this person is is used used used foe foe for but but even yes even yes for minus minus yes yes yes yes yes even yes even minus  even    even even even even minus minus prime prime prime prime down down down down      minus minus 2 minus 80 90 minus minus minus 1 minus 2     minus   6 minus 7 minus 8 minus 9 minus 10 minus 11 minus 12 minus 13 minus 14 minus 15 minus 1 minus 2 minus 3 minus 4 minus 5 minus 6 minus 7 minus 8 minus 9 minus 10 minus 11 minus 12 minus 13 minus 14 minus 9  11 minus  minus     2 minus 9 minus 1 minus 10 minus 9 minus 7 minus 5 minus 7 minus two 3 minus 1    2   minus 2 2 minus 3 minus 3 i t l S o sa l E S get l e l s e l L E A L E A L E E L E L E A L E E E A L E E L E E L E E E L E L E L E E L E L E L E L E
judges: Graber, Tallman, Edmunds